**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **DAVID KRONENBERG,** | ) | |
| | ) | |
| **Plaintiff, pro se** | ) | |
| | ) | **Case No. 09-cv-04137** |
| **v.** | ) | |
| | ) | |
| | ) | |
| **BAKER & MCKENZIE LLP,** | ) | **Magistrate Judge Jeffrey Cole** |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

### INTRODUCTION

*Pro se* plaintiff David Kronenberg, a lawyer, initiated this lawsuit in 2009 against his former

employer, Baker & McKenzie LLP ("Baker"), alleging, among other things, that Baker discriminated

and retaliated against him in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. §

12201 *et seq.*, ("ADA").  Mr. Kronenberg claims that Baker failed to provide him reasonable or

substitute accommodation after he informed human resources and a supervising partner that he was

suffering from "a chronic degenerative spinal condition" – a disability which he alleges substantially

impaired his ability to perform his work as an associate attorney with the firm.  *(Amended*

*Complaint*, Introduction, p. 1).

As part of its discovery requests, Baker served interrogatories and production requests on Mr.

Kronenberg, seeking "the names of all [his] physical and mental healthcare providers from 2000 to

the present" and "an original, signed release" for any medical information or documents relating to

treatment by these providers.  (*Defendant's Motion to Compel Discovery Responses* at 1,

6)("*Motion*").  Mr. Kronenberg objected to the breadth of Baker's demands and only provided

information concerning those physicians who treated his back disorder since 1998.  (*Motion* at 6).

He has refused to execute general releases and instead limited his disclosure to only those medical

records related to treatment of his spinal condition.  (*Id.*).

Dissatisfied with these responses, Baker has filed a "Motion to Compel Discovery

Responses."  In his response brief, Mr. Kronenberg contends that records or information relating to

any of his mental healthcare providers are protected from discovery by the psychotherapist-patient

privilege.  (*Plaintiff's Response in Opposition to Defendant's Motion* at 1-2)(*"Response"*).  It is

Baker's contention that Mr. Kronenberg has placed his mental health in issue, thus waiving his

psychotherapist-patient privilege by seeking damages for pain and suffering and by seeking

reinstatement and back pay.  In light of the claimed waiver, Baker contends that  the mental health

information sought in Baker's interrogatories and production requests is discoverable.

All evidentiary privileges are vexatious in their immediate impact since they impede the

"search for the truth."  It is for that reason that they are construed narrowly.  *See Pierce County,*

*Wash. v. Guillen,* 537 U.S. 129, 144-145 (2003); *University of Pennsylvania v. E.E.O.C.,* 493 U.S.

182, 189 (1990); *Herbert v. Lando*, 441 U.S. 153, 175 (1979); *United States v. Nixon*, 418 U.S. 683

(1974).  But neither law nor life is governed, to borrow Toynbee's lambent phrase, by a "single

supreme simplicity."  There are values and deeply felt intuitions of public policy beyond the search

for truth that must be weighed in the balance.  One of the interests of transcendent importance is the

mental health of the Nation's citizenry.  To promote that vital public interest, the Supreme Court has

recognized a psychotherapist-patient privilege in the federal courts.  *Jaffee v. Redmond*, 518 U.S. 1

(1996).  And consistent with the importance attached to that vital public interest, the Court in *Jaffee*

rejected any balancing test that would allow a judge, in determining questions of privilege, to weigh the privilege against the asserted need for the evidence.

At bottom, Baker's arguments, although not phrased this way, are little more than a claim that Mr. Kronenberg's mental health records may have relevant information to which Baker should have access because it will assist Baker in its presentation of its case and in the defense of Mr. Kronenberg's case. To accept such an argument would resurrect the balancing that *Jaffee* foreclosed and would disregard the principle that "[p]arties ... do not forfeit [a privilege] merely by taking a position that the evidence might contradict." *United States v. Salerno,* 505 U.S. 317, 323 (1992). If this principle were not the rule, then in virtually every case a waiver might be found since the party opposing the privilege could argue plausibly that the psychological records might well reveal significant evidence that would contradict the evidence offered by the party asserting the privilege or call into question the privilege holder's veracity.

The cases teach that a plaintiff in an ADA case does not forfeit his psychotherapist-patient privilege merely by asserting a physical "disability;" by seeking damages that do not include emotional damage; or by making but later withdrawing or formally abandoning a claim for emotional distress. It is only when a party puts his mental state in issue through some action of his own designed to advance his interests in the case (such as by claiming a disability involving his mental state, by basing his claim upon the psychotherapist's communications with him, or selectively disclosing part of a privileged communication) that the privilege is waived.[1] *In re Sims,* 534 F.3d 117, 134 (2nd Cir. 2008). Nothing like that has occurred in this case.

---

[1] This is not intended as an exhaustive list.

## BACKGROUND OF THE LITIGATION

### A.

### The Amended Complaint

Mr. Kronenberg's Amended Complaint states that he has suffered from degenerative spinal disk disease since at least 1998, when he underwent surgery to alleviate the severe back pain and nerve damage that had rendered him unable to walk, stand or sit up. The surgery was apparently successful because, between 1999 and 2006, Mr. Kronenberg experienced only relatively minor symptoms or pain. It was during this time – in September 2004 – that Mr. Kronenberg joined Baker & McKenzie as an associate attorney in its Chicago office.

Between July 2005 and September 2005, Mr. Kronenberg received his first annual performance review at Baker – a comprehensive and structured report, the results of which he claims were overwhelmingly positive. In the spring of 2006, however, Mr. Kronenberg's back condition worsened, causing radiating pain and involuntary muscle movement, which made it difficult for him to work for extended periods at a computer. According to the Amended Complaint, it was at this point that Mr. Kronenberg approached his supervisor, James O'Brien, and requested to meet with him to discuss a medical leave or other accommodation to his disability. According to the complaint, Mr. O'Brien failed to respond to repeated informal requests to meet and discuss accommodation to Mr. Kronenberg's disability. Mr. Kronenberg then filed a formal written request for a medical leave of absence under the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.*, ("FMLA"), and he submitted a proposed reduced work schedule as an accommodation for his "disability."

In August 2006, Baker granted Mr. Kronenberg an "administrative" leave, which was converted to FMLA leave as soon as the necessary paperwork had been completed. Mr. Kronenberg alleges that Baker promised in writing to restore him to his position at the end of his FMLA leave and to reconsider his request for making reasonable accommodations to his disability. At the end of the FMLA leave period, however, Baker again declined to provide him reasonable accommodation and did not reinstate him or attempt to find him an equivalent position as they promised. Instead, Mr. Kronenberg's FMLA leave was converted to an "indefinite administrative leave." (*Id.*).

During this absence, Mr. Kronenberg requested that Baker make accommodations for his spinal condition by modifying his employment from full-time to part-time. In March 2007, Baker informed Mr. Kronenberg that no part-time positions were available. In April, the parties again discussed the matter over the telephone, and at Baker's request, Mr. Kronenberg submitted a written proposal for his modified employment, which included ergonomic furniture in addition to his prior request for part-time employment. (*Id.* at 7).

Having heard nothing from Baker for nearly two months, Mr. Kronenberg followed up by inquiring as to the progress of the evaluation of his proposal and invited Baker to propose its own alternative accommodation measures if it disliked any aspect of the existing proposal. Baker finally responded on June 15, 2007, by informing Mr. Kronenberg that it had instead planned to terminate his employment and that he would soon be receiving a severance agreement. Mr. Kronenberg once again appealed to Baker by submitting yet another formal written request that it either consider his proposal or provide an alternate plan for reasonable accommodation to his disability. Baker failed

to respond to this request, and, on July 31, 2007, it terminated Mr. Kronenberg's employment. Baker's Answer does not say why he was terminated beyond contending that it was for legitimate and non-discriminatory reasons.

Of the eleven counts originally charged in the complaint, only two counts under the ADA remain in the action. Count I, captioned "Americans with Disabilities Act: Failure to provide reasonable accommodation; Unlawful discharge," alleges that Baker's conduct violated the ADA, and refers to 29 CFR 1630.9, which provides that "it is unlawful for a covered entity not to make reasonable accommodation to the known physical or mental limitations of an otherwise qualified applicant or employee with a disability, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of its business." Count II, captioned "Americans with Disabilities Act: Retaliation," claims Baker retaliated against him in violation of the ADA.

The Amended Complaint alleges that Baker has "deprived [him] of equal employment opportunities," and that as a result, Mr. Kronenberg has suffered "economic loss, deleterious impact to his professional career, dignitary injuries, and other injuries." (*Amended Complaint* at ¶¶68-72, 81). The Amended Complaint seeks to hold Baker liable for its claimed discrimination based upon Mr. Kronenberg's "chronic degenerative spinal condition" and seeks to require "Baker to reinstate [him] to his position as an associate attorney, with appropriate accommodations." The Amended Complaint also requests an award of backpay, punitive damages, and attorney's fees and costs.

**B.**

**Baker's Discovery Requests**

During the course of discovery Baker subpoenaed from certain of Mr. Kronenberg's healthcare providers medical records both related and unrelated to his leave of absence and his claimed disability. Baker also served interrogatories on Mr. Kronenberg requesting the names of all physical and mental healthcare providers from 2000 to the present, as well as production requests seeking a medical records release for each of these providers. (*Reply* at 5-6). Mr. Kronenberg objected to these requests, but agreed to provide Baker with the names of those physicians who treated him for his back condition since 2000, as well as tender a release for medical documents relating to his back disorder.[2] (*Motion* at 6). Pursuant to Local Rule 37.2, the parties conferred in an attempt to resolve the dispute, but having apparently reached an impasse, Baker filed the instant motion to compel. At issue are Baker's Interrogatory No. 8 and Document Request No. 8, which state:

> **Interrogatory No. 8**
>
> Identify all physicians, psychiatrists, psychologists, mental health professionals, or personal or family counselors with whom you have consulted or from whom you have received treatment from 2000 through the present.
>
> **Plaintiff's Response**
>
> Plaintiff objects to this Interrogatory to the extent it seeks information that is beyond the scope of proper discovery, that is not related to the claim or defense of any party nor reasonably calculated to lead to the discovery of admissible evidence, and is therefore intended only to burden or harass. Plaintiff further objects to this Interrogatory to the extent that it seek [sic] information that is protected or would be protected by the therapist-client privilege.

---

[2] In an email supplement, Mr. Kronenberg also provided physician information for treatment related to his back disorder from 1998. (*Motion* at 6).

Without waiving these objections or any other applicable objection or privilege, Plaintiff states that the following physicians were consulted with regard to Plaintiff's back condition, which is the subject of Counts I and II….

**Document Request No. 8**

Provide an original, signed release for medical information for each physician, medical doctor, social worker, psychologist, therapist or other health care professional or personal or family counselors with whom you consulted or from whom you have received treatment since 1998, each release to be in the form attached hereto….

**Plaintiff's Response**

Plaintiff objects that this Request in its current form is overbroad and unduly burdensome and is not reasonably calculated to lead to the discovery of relevant or admissible evidence.

In its motion, Baker argues that Mr. Kronenberg's mental healthcare records – which it concedes are otherwise privileged – are both relevant and discoverable since proving a claim under the ADA requires Mr. Kronenberg to show that he was capable of performing the essential functions of his job as a lawyer without regard to accommodation, and the records are relevant to that issue. (*Motion* at 4; *see also* 42 USC § 12111(8)). Baker also argues that Mr. Kronenberg "waived the psychotherapist-patient privilege by...including a request for relief which includes back pay, reinstatement and compensatory damages." (*Reply* at 2).

Mr. Kronenberg has a rather different view of the matter. Conceding that the materials sought by Baker may have relevance to the case, (*Response* at 2), Mr. Kronenberg contends that he has not waived the psychotherapist-patient privilege since his Amended Complaint, having alleged neither emotional injury nor sought damages for emotional distress, did not place his mental health at issue. In light of the concession of relevancy – which seems provident given the broad scope of that concept under Rule 26, Federal Rules of Civil Procedure, *Sirazi v. Panda Express, Inc.,* 2009

WL 4232693, 2 (N.D.Ill. 2009) – the sole issue for consideration is whether Mr. Kronenberg waived

his psychotherapist-patient privilege. (*Reply* at 1).

## ANALYSIS

### A.

The federal common law psychotherapist-patient privilege shields from disclosure any "confidential

communications between a licensed psychotherapist and her patients in the course of diagnosis or

treatment." *Jaffee*, 518 U.S. at 15. Because the administration of effective psychological treatment

depends strongly upon a relationship of confidence and trust, the privilege "serve[s] a public good

transcending the normally predominant principle of utilizing all rational means for ascertaining

truth." *Id.* Like other testimonial privileges, however, the psychotherapist-patient privilege may be

waived. *Id.* at 15 n.14. Whether a party seeking to avoid disclosure has waived the privilege cannot

be determined by any general formula in advance; it is, rather, a matter to be determined on a "case-

by-case basis." *Id.* at 18.

Similar to a waiver of the attorney-client privilege, a party may surrender the psychotherapist-

patient privilege by affirmatively placing his or her psychological state at issue in the suit. *Doe v.

Oberweis Dairy*, 456 F.3d 704, 718 (7th Cir. 2006); *Schoffstall v. Henderson*, 223 F.3d 818, 823 (8th

Cir. 2000)(collecting cases). One way in which this can occur is by the plaintiff affirmatively

claiming a "disability" involving mental health. *See e.g.*, *Wynne v. Loyola Univ. of Chicago,* 1999

WL 759401 (N.D.Ill. 1997) (the claimed disability was "major depression"); *Metzger ex rel.

Anderson v. Francis W. Parker School,* 2001 WL 910443 (N.D.Ill. 2001)(claimed disability was

attention deficit hyperactivity disorder and co-existing related emotional conditions). *Cf. United

States v. Wilk*, 572 F.3d 1229, 1236 (11th Cir. 2009)(defendant's mental status was central to his

defense); *Darst v. Interstate Brands Corp.,* 512 F.3d 903 (7th Cir.2008)(in an FMLA interference/entitlement action, since the employee must demonstrate an entitlement to FMLA leave, medical records were discoverable). Another way in which a plaintiff places his mental health at issue is when he is "seeking damages for emotional distress...." *Doe*, 456 F.3d at 718. *See also Maday v. Pub. Libraries of Saginaw,* 480 F.3d 815, 821 (6th Cir. 2007); *Schoffstall v. Henderson,* 223 F.3d 818, 823 (8th Cir. 2000); *Fisher v. Southwestern Bell Tel.Co.,* 2010 WL 257305, *3 (10th Cir. 2010); *Koch v. Cox*, 489 F.3d 384 (D.C. Cir. 2007).

In these and comparable circumstances, waiver is based upon the obvious principle of fairness that a party "cannot inject his or her psychological treatment, conditions, or symptoms into a case and expect to be able to prevent discovery of information relevant to those issues." *Santelli v. Electro-Motive*, 188 F.R.D. 306, 309 (N.D. Ill. 1999). *Cf. In re Grand Jury Proceedings*, 219 F.3d 175, 182 (2nd Cir. 2000)("implied waiver may be found where the privilege holder 'asserts a claim that *in fairness* requires examination of protected communications.'")(attorney client privilege); *Lorenz v. Valley Forge Insurance. Co.*, 815 F.2d 1095, 1098 (7th Cir.1987)(same)("Implicit disclosure can occur when a holder ... relies on a legal claim or defense, the truthful resolution of which will require examining confidential communications."). The parlance often employed in the cases is that one cannot use a privilege as both a shield and a sword. *In re Grand Jury Proceedings*, 219 F.3d at 182 (internal citations omitted). *See also In re Sims*, 534 F.3d at132; 21 C. Wright & K. Graham, Federal Practice and Procedure § 5039 at 828 (2005).

Contrary to Baker's unamplified contention, this case presents no "risk that a decision maker will accept the privilege-holder's statements without his opponent's having an adequate opportunity

to present rebutting evidence...." *In re Sims,* 534 F.3d at 132. Mr. Kronenberg is not relying upon

any of his mental health records to establish that he is a "qualified individual" under the ADA. Nor

will he be presenting any testimony from any of his healthcare professionals with whom he may have

consulted about mental health issues. And, there certainly is no sly attempt by Mr. Kronenberg to

argue that he has some mental health impairment, while refusing to allow Baker access to the records

that would allow it to meet the force of the argument and to test its underlying truthfulness. Baker

is no different position than any other litigant eager to obtain relevant evidence to which it cannot

have access because the evidence falls within the scope of some testimonial privilege. No doubt,

a party's ability to make out its claim or defense would in many cases be eased substantially if it

could have access to privileged information. But that does not render an otherwise valid privilege

inapplicable. *In re Sims,* makes the point:

> In reality respondents simply seek to have the privilege breached whenever there is
> a possibility that the psychiatric records may be useful in testing the plaintiff's
> credibility or may have some other probative value. To accept these contentions
> would inject the balancing component that *Jaffee* foreclosed, and would disregard the
> principle that "[p]arties ... do not forfeit [a privilege] merely by taking a position that
> the evidence might contradict," *Salerno,* 505 U.S. at 323. If this principle were not
> the rule, then in virtually every case a forfeiture might be found, as in virtually every
> case the party opposing the privilege could argue that the psychological record might
> reveal evidence that the party asserting the privilege is testifying falsely.

534 F.3d at141-142

## B.

Baker's contention that there has been a waiver of the privilege is bottomed on the ADA's

requirement that Mr. Kronenberg prove that he is able to perform the essential functions of the

position from which he was fired with or without reasonable accommodation. 42 U.S.C. § 12111(8).

Baker asserts that the information sought is therefore relevant and necessary to effectively defend

against Mr. Kronenberg's ADA claim. (*Motion* at 3-4). The motion further claims that Mr. Kronenberg's requests for reinstatement (and back pay) allow Baker to have *carte-blanche* access to all mental health records in order to "explore whether [Mr. Kronenberg] is and has been able to perform the essential functions of a lawyer with or without reasonable accommodation since his departure on July 31, 2007." (*Id.* at 4).

The soundness of a conclusion may not infrequently be tested by its consequences. *See* Posner, Cardozo: A Study in Reputation, 118 (1990); *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 741 (1985); *Parents Involved in Community Schools v. Seattle School Dist. No. 1*, 551 U.S. 701 (2007)(Breyer, J., dissenting). If Baker's argument were accepted, the consequences to the psychotherapist-patient privilege in any ADA case – especially one in which a plaintiff was seeking reinstatement – would be devastating: the privilege would effectively cease to exist. But no case even remotely supports such an extreme position, and the result for which Baker contends cannot be squared with the Supreme Court's holding in *Jaffee* that the psychotherapist-patient privilege must be determined on a case-by-case basis. 518 U.S. at 18.

Forcing an ADA plaintiff, under the theory of implied waiver, to reveal all of his personal and confidential mental health information simply by having filed the suit even though no mental health issues were placed in issue would stretch the waiver concept beyond all bounds and would make the Supreme Court's requirement in *Jaffee* that there be a careful case-by-case analysis meaningless in ADA cases. Indeed, if Baker's thesis is right, there could be no psychotherapist-patient privilege in an ADA case.

Of course, a defendant in an ADA case is free to introduce any relevant and otherwise admissible evidence it wishes relating to the plaintiff's capacity to perform the job – so long a it was properly disclosed during discovery. That evidence may well reflect on the plaintiff's mental state. Suppose, for example, that an ADA defendant had evidence in the form of testimony of co-workers that a plaintiff appeared delusional, had violent mood shifts, was anxious and often uncontrollably angry for no apparent reason.[3] The defendant could certainly argue that whether or not this kind of behavior constituted some pathology, it demonstrated that the plaintiff could not get along with co-workers and do his job. In other words, he was not a qualified individual, and that this was the reason he was fired, not because of the physical disability alleged by the plaintiff. But that theory of the case would not mean that the defendant was entitled to have access to the plaintiff's privileged mental health records to gather further evidence. During discovery, the plaintiff in such a circumstance is faced with a choice: assert the psychotherapist-patient privilege, as Mr. Kronenberg has done, and try to meet the force of that anticipated evidence with non-privileged evidence of his own at trial or meet the force of the non-expert evidence with evidence that is otherwise privileged – which, of course, will waive the privilege. Of course, a plaintiff cannot invoke the psychotherapist-patient privilege during discovery and then at trial seek to introduce the very evidence the discovery of which he resisted on privilege grounds. That would be not merely a return to what Wigmore called the "sporting theory of justice," the eradication of which was the design of the Federal Rules of Civil Procedure, *Miller v. Lenz,* 2010 WL 252287, 6 -7 (N.D.Ill. 2010), but would render meaningless Rule 37's prohibition of the introduction of evidence that had not been disclosed during discovery.

---

[3] This is not the kind of evidence that would require expert testimony under Rule 702, Federal Rules of Evidence.

Not one of the cases cited by Baker supports its contentions. Those cases announce the general rule that "ADA plaintiffs, like all plaintiffs in an action for medical malpractice, waive all privileges and privacy interests related to their claim by virtue of filing the complaint." (*Reply* at 5) (citing *Butler v. Burroughs Wellcome, Inc.*, 920 F.Supp. 90, 92 (E.D.N.C. 1996); *Wynne v. Loyola Univ. of Chicago*, 1999 WL 759401 (N.D. Ill 1999); *Patterson v. Chicago Assoc. for Retarded Children*, 1997 WL 323575 at *3 (N.D. Ill. 1997). Quite apart from the fact that "general propositions do not decide concrete cases," *Lochner v. New York*, 198 U.S. 45, 76 (1905)(Holmes, J., dissenting), the cases, themselves, make clear that any waiver must be related to "the[ ] claim" advanced by the plaintiff, not some claim advanced by the defendant. In *Wynne,* for example, the disability alleged in the complaint was "major depression." 1999 WL 759401 at *1-2. Thus, the court ordered discovery of otherwise privileged psychotherapist records because the plaintiff explicitly made her mental health *the issue* in the case, and the documents sought clearly related to that claim. *Id.* Similarly, in *Patterson*, the plaintiff alleged in her complaint that she "'is disabled and suffers from a mental illness.'" *Id*. at *3. Little wonder the district court held that the plaintiff put her mental condition "at issue[, thereby] waiv[ing] any claims of privilege to relevant information that her psychiatrist might possess." *Id*. *See also* discussion at p. 8, *supra.* The instant case differs, *toto coelo*, for Mr. Kronenberg has alleged only a physical disability as the basis for his ADA claim.[4] He has not placed his mental health status at issue. Baker's contrary thesis, if correct, would result in an implied waiver in every ADA case and would sound the death knell for the psychotherapist-patient privilege for an entire class of cases.

---

[4] Many of the remaining cases which Baker cites either arose in a non-ADA context or are generally inapposite to its argument. *See e.g., Williams v. NPC Intern., Inc.*, 224 F.R.D. 612 (N.D. Miss. 2004), for example, does not discuss claims brought under the ADA, and thus has no bearing on Baker's position with regards to this contention.

Finally, while there is a suggestion that depression may be playing some role in Mr. Kronenberg's physical symptoms, both the Second and D.C. Circuits have rejected the notion that "any time it is possible, as a matter of medical science, that a plaintiff's mental condition-depression, anxiety, remorse, etc.– may be a cause of his alleged physical condition, or even just aggravate that condition, the plaintiff necessarily has put his mental state in issue and thereby waived the psychotherapist-patient privilege." *Koch,* 489 F.3d at 389-90; *In re Sims,* 534 F.3d at 134.

Baker places substantial reliance on this court's opinion in *Hodgdon v. Northwestern University*, 245 F.R.D. 337 (N.D. Ill. 2007), which granted the defendant's motion to compel the production of the plaintiff's mental health and other records.[5] The difficulty with Baker's reading of *Hodgdon* is that it puts out of view the critical facts of the case in contravention of the Supreme Court's repeated admonition against the hyper-literal parsing of and preoccupation with words excised from the informing context of the opinion. *See United States v. Apfelbaum*, 445 U.S. 115, 120 n.6 (1980); *Monell v. Dept.of Social Services of New York City*, 436 US 658,696 (1978); *Penry v. Lynaugh*, 492 U.S. 302, 358 (1989)(Scalia, J., concurring and dissenting in part)("One must read cases, however, not in a vacuum, but in light of their facts...."). And, time and again the Seventh Circuit has stressed that "it is a disservice to judges and a misunderstanding of the judicial process to wrench general language in an opinion out of context." *Aurora Loan Services, Inc. v. Craddieth*, (7th Cir. 2006). *See also Wisehart v. Davis*, 408 F.3d 321, 326 (7th Cir. 2005); *East St. Louis Laborers' Local 100 v. Bellon Wrecking & Salvage Co.*, 414 F.3d 700, 705 (7th Cir. 2005); *McCready v. Jesse White*, 417 F.3d 700, 702-703 (7th Cir. 2005).

---

[5] The opinion was adapted in full by the district court on review.

Properly read, *Hodgdon* neither holds nor supports the proposition that merely because a plaintiff in an ADA case must prove that he is qualified to perform the job (or is seeking reinstatement) he waives the psychotherapist-patient privilege. Indeed, *Hodgdon* was a relevancy, not a privilege case, and the facts in *Hodgdon* could scarcely be more dissimilar from those presented here. In his Complaint, Professor Hodgdon alleged that he had an "illness," which necessitated his obtaining a medical leave of absence from the University. The Complaint went on to allege that he had, in fact, "recovered from his illness, and that he had provided a certification from his physician, Dr. Chris Oh, "that he was in good health and was able to return to work." *Id.* at ¶¶11, 15-16. Unwilling to accept Dr. Oh's conclusory opinion, the University asked Professor Hodgdon to participate in an evaluatory program at Rush Behavioral Health. He refused and sued the University. The complaint alleged that as a result of the University's improper demand that Professor Hodgdon participate in this program and its refusal to allow him to return to work he "suffered embarrassment and humiliation, [and] unnecessary emotional distress and suffering." (*Complaint* at ¶36). It was in this context that the opinion said the records were relevant and granted the University's motion to obtain the records from Professor Hodgdon's medical providers.[6]

The disability in *Hodgdon* did not involve a physical injury, but rather what the opinion characterized with purposeful and protective vagueness as "an illness that by any standard cannot be deemed insignificant." *Hodgdon*, 245 F.R.D. at 332.[7] The question of Professor Hodgdon's

---

[6] *See* 245 F.R.D. at 343-344. "In short, the medical evidence sought by the University is relevant under Count I. It is also relevant under Count II. ... As phrased, the medical records are plainly relevant. ... At a minimum, the medical evidence sought by the University is relevant to the second element. ... In sum, the medical records sought by the University are relevant to the pivotal question under Count II whether Professor Hodgdon is capable of performing the essential functions of the job he holds or desires."

[7] So sensitive were the documents relating to Professor Hodgdon's illness that they were filed under seal.

recovery from that non-physical illness was at the core of the case and involved aspects of his mental health. Under those circumstances, he could not, without flaunting basic fairness, *see supra* at 9, draw a conjurer's circle around the matter of his "illness" and preclude his employer from having access to the very records that would have either verified or repudiated the complaint's claim that he had recovered from it. As the opinion phrased it: "It would seem odd, indeed, if the University did not have the right to confirm the accuracy of Dr. Oh's conclusion that all was well given its laconism [-- the letter was essentially a one line, uninformative and unexplained conclusion -- ] and the 'biases that a treating physician may bring to the disability evaluation.'" *Hodgdon,* 245 F.R.D. at 342 (citations omitted). *See also* cases discussed *supra* at 10.

"[W]hether fairness requires disclosure…is best decided on a case by case basis, and depends primarily on the specific context in which the privilege is asserted." *John Doe Co. v. United States*, 350 F.3d 299, 302 (2nd Cir. 2003). The instant case does not involve the manifest unfairness involved when a party insists that its opponent cannot take discovery to test the validity of the status of a mental health claim that is at the heart of a judicial proceeding. *Compare Roadway Exp., Inc. v. U.S. Dept. of Labor*, 612 F.3d 660, 665 (7th Cir. 2010)(party not allowed to allege dishonesty on the part of an employee while resisting discovery on that issue). And, unlike *Hodgdon*, no claim is made here for any kind of emotional injury or embarrassment. To the extent such a claim existed, it has been repeatedly, unambiguously, and explicitly disavowed by Mr. Kronenberg.

On September 28, 2010, I entered the following minute order:

Mr. Kronenberg, who is a lawyer and who appeared on his own behalf in court at the status conference, once again disavowed and waived on the record any claim or argument that he might otherwise have for emotional damages of any kind, including what some cases have referred to as "garden variety" emotional or mental damages. This is perhaps the third time Mr. Kronenberg has done so on the record. He stated today, as he has in the past, that his damage calculations, which he has provided to the defendant, intentionally omitted any request for or itemization of emotional damages resulting from any conduct of Baker & McKenzie. The same is true of his Amended Complaint, which conspicuously does not contain any damages for emotional harm or suffering. [citation omitted]. At my request, so as to avoid any uncertainty on the issue, Mr. Kronenberg has agreed to stipulate in writing that he has knowingly and intentionally waived any claim for emotional damages, however described, including any claim for "garden variety" emotional damages. Mr. Kronenberg is instructed to prepare an appropriate written stipulation setting forth this waiver and submit it to defense counsel for her review. Mr. Kronenberg expressed today, as he has in the past, his understanding that his waiver will preclude him from attempting to adduce at trial evidence of emotional harm or damage of any kind. Mr. Kronenberg shall promptly file the stipulation as part of the record in this case. [Dkt. #97].

Mr. Kronenberg filed the agreed upon stipulation on October 5, 2010. Among other things, the stipulation stated that Mr. Kronenberg is not claiming emotional distress damages because he "did not suffer any emotional distress from or as a result of Baker's actions." Mr. Kronenberg went on to say that he waives "now and forever" any claims for emotional distress damages however described and whether of the "garden variety" or "any other." [Dkt. 99]. [8] By withdrawing a possible claim for damages, Mr. Kronenberg has precluded a claim of waiver. *See In re Sims*, 534 F.3d at 117; *Koch*, 489 F.3d at 384.[9]

---

[8] The courts are divided on the issue. A number hold that there is no waiver, *e.g., Santelli*, 188 F.R.D. at 309, while others have reached a contrary conclusion, unwilling to draw fine distinctions between the kind of emotional damage alleged. It is therefore unnecessary to decide whether simply asking for damages for embarrassment or humiliation waives the privilege.

[9] Despite Mr. Kronenberg's earlier, oral repudiations of any claim for emotional damages, Baker contends that Mr. Kronenberg's request for "compensatory damages" put his mental state at issue, with a consequent waiver of the psychotherapist-patient privilege. The motion seeks to support this position by claiming that "compensatory damages," by definition, may include "damages for his psychological state," such as "future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses." (Motion at 4). And perhaps in some contexts they can; but not in the context

Viewed from the perspective of waiver, the result would not be different even had Baker raised in its Answer to the Amended Complaint the issue of Mr. Kronenberg's claimed emotional instability. Constitutional rights are personal and may not be asserted (or waived) vicariously. *Secretary of State of Md. v. Joseph H. Munson Co., Inc.*, 467 U.S. 947 (1984). The same is true of testimonial privileges like the attorney-client or psychotherapist-patient privilege, *United States. v. Hatcher,* 323 F.3d 666, 674 (8th Cir.2003), and thus waiver can only result from action of the plaintiff, not from that of the defendant. *See In re Sims,* 534 F.3d at 134(psychotherapist-patient privilege); *Kevlik v. Goldstein,* 724 F.2d 844, 850 (1st Cir.1984)(attorney-client privilege).

Moreover, Baker does not claim that they fired Mr. Kronenberg because of some mental health issue. Rather, it insists, that he was fired because he was not competent, as measured by Baker's standards. Baker is not entitled to rummage around in Mr. Kronenberg's privileged and confidential mental health records on a scavenger hunt for nuggets of evidence, previously unknown to and not relied on by Baker in this case, which may be used to reimagine another reason for why it did not believe that Mr. Kronenberg was a "qualified individual" at the time of his termination.

Baker further suggests that Mr. Kronenberg placed his psychological state at issue by attaching to his complaint an investigation report completed by the Illinois Department of Human Rights ("IDHR") as part of the paperwork required for obtaining a notice of right-to-sue from the Equal Employment Opportunity Commission. The investigation report contains physician progress

---

of this case, given Mr. Kronenberg's explicit waiver of a claim for damages for any sort of emotional pain or suffering, however described, and in light of his unambiguous, repeated representations that his complaint was not intended to seek such damages. It is thus quite beside the point whether this Circuit adheres to a broad view of waiver where one claims damages for emotional suffering or humiliation. *See Oberweis Dairy, supra.* The federal courts have varyingly advanced an either "broad," "middle" or "narrow" view of waiver where an ADA plaintiff seeks damages for humiliation and emotional suffering. *See Beltran v. City of Santa Clara*, 2009 WL 248207, at *2 (N.D. Cal. 2009). *See Doe v. City of Chula Vista,* 196 F.R.D. 562, 565 (S.D.Cal.1999)(discussing the various approaches).

notes dated September 12, 2006, which essentially state that Mr. Kronenberg's symptoms were consistent with his claimed back condition. The report concluded that his request for FMLA short term disability from work was reasonable given his "inability to work as a lawyer due to leg pain while treatment plans are made." The examining physician also noted that "[d]epression may also be playing a role." (*Amended Complaint*, Ex. 1 at 7).

Mr. Kronenberg explains that he only attached the IDHR investigation report to the complaint along with the notice of right-to-sue because he thought, mistakenly as it turns out, that he was required to do so by this court's Local Rules. (*Response* at 6). "[A] waiver is a voluntary relinquishment of a known right." *United States v. Blagojevich*, 614 F.3d 287, 291 (7th Cir. 2010). Mr. Kronenberg's mistaken action is not a sufficient basis on which it may be concluded that he voluntarily waived his psychotherapist-patient privilege. Finally, it bears repeating that Mr. Kronenberg has said over and over that he is not relying on any mental health issue to make his case or to support any damage claim. Nothing on the present record, therefore, even hints at any "affirmative steps [by Mr. Kronenberg] to inject privileged materials into the litigation." *In re Sims*, 534 F.3d at 132 (internal citations omitted). *See also John Doe Co.*, 350 F.3d at 187. The record reveals precisely the opposite.

It cannot be too often stressed or too strongly repeated that given Mr. Kronenberg's presentation in response to Baker's Motion and his solemn representations on the record, he will not be allowed to make any claim of emotional harm from any action of Baker, nor will he be allowed to introduce any evidence of depression in order to make out his case or enhance his damages. To allow him to do so would not only be extraordinarily unfair and prejudicial to Baker, it would allow

Mr. Kronenberg to disavow the position he has taken throughout the course of this litigation – a position that is central to my decision not to grant Baker discovery of Mr. Kronenberg's mental health records.

## C.

There is a final point to be discussed. Baker's claim of waiver is also bottomed on documents it obtained in discovery pursuant to a subpoena served on Foley & Hoag LLP, Mr. Kronenberg's employer from November 2007 to January 2009. Those documents, which were produced without objection from Mr. Kronenberg, (*Motion* at ¶4), and which were filed under seal have revealed that in support of his December 11, 2008 request for Family Medical Leave from Foley & Hoag, Mr. Kronenberg, himself, submitted a Certification of a healthcare provider. The assessment of Mr. Kronenberg's mental health status described in the Certification is said to have begun in about December 2007, and it was anticipated that the condition giving rise to the need for leave would last through December 2009. According to Baker, "[t]his documentation further places plaintiff's mental health at issue," because the documents are "relevant." Relevant they may be; but how they demonstrate that Mr. Kronenberg has placed his mental health at issue, the Motion does not explain. Nor could it. The Foley & Hoag documents do not in the slightest show that *Mr. Kronenberg* has placed his mental health at issue *in this case* through any action of his own. All that occurred is that *Baker's lawyers* obtained by subpoena information that has arguable relevance to the case. Baker, not being the privilege holder, cannot waive Mr. Kronenberg's privilege by its unilateral action.

Two other considerations preclude the Foley & Hoag documents from working the kind of

encompassing waiver contended for by the Motion. First, Mr. Kronenberg's claim for back pay is for the period 9/23/06 through 10/27/07 and 1/2009 through the date of trial. No claim is made for back pay during the period of time he was at Foley & Hoag, which is the period covered by the FMLA Certification that was produced pursuant to subpoena. While Mr. Kronenberg's failure to object to the subpoena initially or to object to the production thereafter on some privilege ground precludes him from raising a claim of privilege to the document that was produced, *Patterson v. Chicago Assoc. for Retarded Children*, 1997 WL 323575 at *3 (N.D. Ill. 1997), it certainly would not appear to work a waiver of any psychotherapist-patient privilege claim he might have for any period other than the time he was at Foley & Hoag, or for any healthcare professional other than the person who was involved in any treatment for the condition discussed in the Certification. *Cf. Koch,* 489 F.3d at 390-91 (plaintiff's waiver of the privilege as to a different doctor with respect to physical ailments did not put his mental condition in issue or waive his psychotherapist-patient privilege). Significantly, Baker's Motion makes no such claim and thus, Baker, itself, has forfeited any argument on that score. *Cf. Miller Aviation v. Milwaukee County Bd. Of Supervisors*, 273 F.3d 722, 727 (7th Cir. 2001) (litigant "waived the waiver" argument); *G. Heileman Brewing Co., Inc. v. Joseph Oat Corp.*, 848 F.2d 1415, 1418 (7th Cir. 1988) ("Centrale has waived its waiver argument by raising it in a perfunctory manner and by citing no authority.").

Baker's Reply Brief argues that "[t]he Foley documents [it] submitted under seal demonstrate that Plaintiff was not able to work during the majority of the period since he left Baker." (*Id*. at 6). That is not quite accurate, since the FMLA Certification, even read most favorably to Baker, relates to the period from December 2007 through December 2008. While there is a prediction that the situation discussed in the Certification might persist through December of 2009, the Motion does

not offer any proof that the prediction was anything but that. This is not to say that the Foley & Hoag documents have no relevance to the question of whether Mr. Kronenberg was a "qualified individual." Of course, it is not appropriate to speculate on how Baker may attempt to use the documents at trial or on how Judge Bucklo will rule. What is certain is that Mr. Kronenberg's alleged disability is physical, that he has not injected his mental state into the case, and that he has disavowed that mental health or emotional issues will have any role to play in the presentation of his case or in his request for damages. There is simply no basis, therefore, to conclude that he has waived his psychotherapist-patient privilege.

## CONCLUSION

Baker's Motion To Compel discovery responses is DENIED.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

DATE: 10/15/10